UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**SIMMONE DARGOLTZ**,
individually and on behalf of all
others similarly situated,                                      **CLASS ACTION**

    Plaintiff,                              **JURY TRIAL DEMANDED**

v.

**SHEIN FASHION GROUP, INC.**,

    Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff Simmone Dargoltz brings this class action against Defendant Shein Fashion Group, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's violations of the TCPA.

2. Defendant specializes in "fast fashion" and operates an e-commerce platform focusing on women's wear and apparel.

3. To solicit new customers, Defendant engages in unsolicited telemarketing with no regard for consumers' privacy rights.

4. Defendant's telemarketing consists of sending automated text messages to consumers soliciting them to purchase Defendant's goods.

5. Defendant caused thousands of text messages to be placed to the cellular telephones of

1

Plaintiff and Class Members, causing them injuries outlined below.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

8. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

9. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant initiated and directed telemarketing and/or advertisement text messages into Florida, via an ATDS and without the recipients' prior express written consent, in violation of the TCPA.

10. Specifically, Defendant initiated and directed, or caused to be initiated and directed the transmission of unsolicited advertisement or telemarketing SMS text messages to Plaintiff's cellular telephone number. Plaintiff's cellular telephone number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

11. Plaintiff's claims for violation of the TCPA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's advertisement and telemarketing messages, arose in substantial part from Defendant's direction of those messages into Florida.

12. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendant's actions and omissions, as well as Plaintiff's suffered injuries, which gave

rise to the claims asserted in this action occurred in this District.

## PARTIES

13. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), and a citizen and resident of Miami-Dade County, Florida.

14. Defendant is a corporation organized and existing under the laws of the State of California with its principal place of business at 345 North Baldwin Park Boulevard, City of Industry, California 91746.  Defendant is a subsidiary of Hong Kong retailer ZoeTop Business Co., Limited. Defendant advertises, distributes, and sells products under various brands, including "SHEIN" and "ROMWE," to consumers throughout the United States and operates and manages SHEIN and ROMWE brand business activities based in the United States.

## THE TCPA

15. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

16. The TCPA further prohibits: (1) any person from initiating a call to any residential telephone line; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(B).

17. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18. The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19. In an action under the TCPA, a plaintiff must show only that the defendant "called a

number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

21. In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the

communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

27. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29. Further, the FCC has issued rulings and clarified that consumers are entitled to the same

5

consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

## FACTS

30. On or about November 26, 2019 and November 29, 2019, Defendant sent the following text message advertisements to Plaintiff's cellular telephone number ending in 1564 ("1564 Number"):

> SHEIN Black Friday is in 3 days! Shop items FROM $2 +Get this exclusive offer: 15% OFF orders $69+ with code ONBLKF (valid 11/29-12/2): http://bit.ly/2QNWZVN Text STOP to cancel

> [SHEIN] Flash Sale! Shop items as low as $1.99, plus get FREE SHIPPING (EXP: 11/30/2019 3am EST) Shop now: http://shein.top/i5g255s

> [SHEIN] Are you ready for this? Cyber Monday 6-Hour Flash Sale is about to start! Shop items as low as $1.99: http://shein.top/swxg7zk

31. Plaintiff is the subscriber and/or sole used of the 1564 number.

32. The text messages received by Plaintiff originated from telephone numbers which are owned and/or operated by or on behalf of Defendant.

33. The links contained within the text messages are to Defendant's website.

34. The purpose of Defendant's text messages was to market Defendant's goods, as is plainly evident from the content of the messages.

35. Upon information and belief, Defendant caused similar calls to be placed to individuals residing within this judicial district and nationally.

36. At no point in time did Plaintiff provide Defendant with express written consent to be contacted by Defendant with an automated text message.

37. The generic nature of Defendant's text messages demonstrates that Defendant utilized an ATDS in transmitting the messages.

38. To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

39. The Platform has the capacity to store telephone numbers.

40. The Platform has the capacity to generate sequential numbers.

41. The Platform has the capacity to dial numbers in sequential order.

42. The Platform has the capacity to dial numbers from a list of numbers.

43. The Platform has the capacity to dial numbers without human intervention.

44. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

45. Additionally, the Platform has an auto-reply function that results in the transmission of

text messages to individual's cellular telephones automatically from the system, and with no human intervention, in response to a keyword (e.g. "STOP") being sent by a consumer, which function was also utilized by Defendant.

46.     To transmit the messages at issue, the Platform automatically executed the following steps:

> (1)  The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;
>
> (2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;
>
> (3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.
>
> (4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

47.     The above execution these instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

48.     The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



49.     Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she wasted approximately 20 seconds reviewing Defendant's unwanted messages.

50.     Furthermore, Defendant's text messages each took up 190 bytes of memory on Plaintiff's cellular telephone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. In fact, the FTC has identified slower cell phone performance caused by space taken up on the phone's memory as a real harm. See https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

51.     Defendant's text messages also caused the depletion of Plaintiff's cellular telephone battery. The battery used to power Plaintiff's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

## CLASS ALLEGATIONS

### PROPOSED CLASS

52. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

53. Plaintiff brings this case on behalf of the below defined Classes:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, promoting Defendant's goods, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number.**

54. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

55. Upon information and belief, Defendant has placed calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

56. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

57. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and

fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and the class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> (3) Whether Defendant's conduct was knowing and willful;
>
> (4) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

58. The common questions in this case are capable of having common answers. If Plaintiff's claims that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services are accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

59. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

60. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the

Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff repeats and realleges the paragraphs 1 through 62 of this Complaint and incorporates them by reference herein.

64. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

65. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

66. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such

numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

67. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

68. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

69. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff Simmone Dargoltz, on behalf of himself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

  d.  An injunction prohibiting Defendant from calling telephone numbers assigned to cellular or residential telephones using prerecorded messages without the prior express consent of the called party;

  e.  An award of actual, statutory damages, and/or trebled statutory damages; and

  f.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the text messages as alleged herein.

Date: December 2, 2019

            Respectfully submitted,

            **HIRALDO P.A.**

            */s/ Manuel S. Hiraldo*
            Manuel S. Hiraldo
            Florida Bar No. 030380
            401 E. Las Olas Boulevard
            Suite 1400
            Ft. Lauderdale, Florida 33301
            Email: mhiraldo@hiraldolaw.com
            Telephone: 954.400.4713

            **SHAMIS & GENTILE, P.A.**
            Andrew J. Shamis, Esq.
            Florida Bar No. 101754
            ashamis@shamisgentile.com
            14 NE 1st Avenue, Suite 1205
            Miami, FL 33132
            Telephone: 305-479-2299

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, #417
Aventura, FL 33180
Telephone: 305-975-3320

*Counsel for Plaintiff*